# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                                      :    Chapter 11
                                                            :
TRIBUNE COMPANY, et al.,[1]                                 :    Case No. 08-13141 (KJC)
                                                            :
            Debtors.                                        :    Jointly Administered
                                                            :
------------------------------------------------------------x
                                                            :
TRIBUNE MEDIA SERVICES, INC.,                               :
                                                            :
            Plaintiff/Debtor,                               :
                                                            :
v.                                                          :    Adv. Pro. No. 09-
                                                            :
WARREN BEATTY,                                              :
                                                            :
            Defendant.                                      :
                                                            :
------------------------------------------------------------x

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (4014); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## COMPLAINT

Plaintiff and Debtor Tribune Media Services, Inc. ("TMS" or the "Debtor"), by and through its attorneys Sidley Austin LLP and Cole, Schotz, Meisel, Forman & Leonard, P.A., for its complaint against Defendant, Warren Beatty, states as follows:

## NATURE OF THIS ACTION

1.      Through this action, TMS seeks to confirm its unfettered rights in certain motion picture and television rights to the iconic comic strip character Dick Tracy, the economic benefits of which are worth, potentially, millions to the Debtor's estate and its creditors. The Defendant, Warren Beatty, wrongly claims an ongoing exclusive right to such Dick Tracy motion picture and television rights, despite having made no productive use of such rights for well over a decade and despite all such rights having reverted back to TMS by operation of a written agreement between TMS and Mr. Beatty. Mr. Beatty's claim to continue to lock up such Dick Tracy motion picture and television rights is without legal or factual foundation, and, while left pending and unresolved, deprives the Debtor and its creditors of substantial economic benefits associated with this valuable and iconic property. TMS thus seeks a declaration confirming, under 11 U.S.C. § 541, that all rights in the Dick Tracy property, including certain Dick Tracy motion picture and television rights wrongly claimed by Mr. Beatty, are the sole and exclusive rights of Debtor's estate. TMS further seeks an order pursuant to 11 U.S.C. §§ 362(a) and 105, enforcing the automatic stay and enjoining Mr. Beatty from attempting to exercise any control over the Dick Tracy property.

## THE PARTIES

2.      Plaintiff TMS  is an owner, creator, and distributor of news, information, and entertainment content. A wholly owned subsidiary of Tribune Company, TMS is a Delaware corporation, with its principal place of business in Chicago, Illinois. On December 8,

2008 (the "Petition Date"), TMS (along with its parent Tribune Company and 109 additional affiliated Debtors) commenced in this Court a voluntary case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors, including TMS, have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      Defendant Warren Beatty ("Mr. Beatty" or "Defendant") is, on information and belief, a resident of Los Angeles County, California.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter under the Bankruptcy Code pursuant to 28 U.S.C. §§ 157 and 1334, and under 28 U.S.C. § 1332, as this is a dispute between citizens of different states and the property in controversy has a value in excess of $75,000.

5.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

6.      Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

7.      This Complaint has been brought in accordance with Fed. R. Bankr. P. 7001, and Debtor seeks relief under sections 362(a), 105, and 541 of the Bankruptcy Code.

## FACTS COMMON TO ALL COUNTS

8.      TMS is the owner of the copyright and other rights in, among other things, the published comic strip series entitled DICK TRACY (the "Dick Tracy Property").

9.      Dick Tracy is one of the most recognized detectives in American fiction. The motion picture and television rights to the Dick Tracy Property thus are highly valuable. On information and belief, such motion picture and television rights represent a potential income stream to Debtor's estate of tens of millions of dollars.

45655/0001-5431919v1

10.     On or about August 28, 1985, TMS and the Defendant entered into a written agreement pursuant to which TMS, among other things, "grant[ed] motion picture, television, and customary related rights" in the Dick Tracy Property to Defendant in accordance with and subject to the terms of the agreement (the "Dick Tracy Agreement"). A true and correct copy of the Dick Tracy Agreement is attached hereto as Exhibit A. The Dick Tracy Agreement was amended in certain respects, in writing, on May 15, 1988.

11.     Under the Dick Tracy Agreement, Mr. Beatty, among other things, was to "attempt to enter into an agreement (or agreements) for the financing and distribution of a feature picture based on the [Dick Tracy Property]."

12.     The Dick Tracy Agreement included a provision, in paragraph 9, by which TMS could effect a reversion of all rights granted to the Defendant under the Dick Tracy Agreement. Specifically, paragraph 9 of the Dick Tracy Agreement provided in relevant part: "In the event that, within five years after the initial domestic release of the picture, or any subsequent theatrical picture or television series or special, photography has not commenced on either another theatrical motion picture or television series or special, TMS may give Mr. Beatty notice of its intention to effect reversion of all rights granted hereunder ... . If within two years after receipt of said notice, such principal photography has not commenced, then TMS, by a further written notice to Mr. Beatty, may effect such a reversion."

13.     In 1990, a theatrical motion picture entitled "Dick Tracy" was successfully completed by the Defendant, and TMS received substantial monies under the Dick Tracy Agreement arising from the production and distribution of this motion picture.

14.     Other than certain initial payments related to the Dick Tracy motion picture, ongoing payments to TMS under the Dick Tracy Agreement are dependent upon motion

picture and television programs in fact being made by Defendant within the meaning of the Dick Tracy Agreement.

15. Since the 1990 Dick Tracy motion picture, Defendant has not completed a single theatrical motion picture, television series, or television special under the Dick Tracy Agreement, and TMS has not received any payments under the Dick Tracy Agreement other than those arising from the 1990 Dick Tracy motion picture (excluding a sham $15,000 check sent by the Defendant in November 2008 described in more detail below).

16. On or about November 17, 2006, and in light of Defendant's utter failure for well over a decade to make any productive use of the Dick Tracy Property, TMS served written notice by certified mail, pursuant to paragraph 9 of the Dick Tracy Agreement, of its intent to effect a reversion of all rights granted to the Defendant in the Dick Tracy Agreement (the "2006 Reversion Notice"). The 2006 Reversion Notice notified the Defendant that, unless he commenced principal photography on another theatrical motion picture or television series or special under the Dick Tracy Agreement within two years, all rights granted to him under that Agreement would revert back to TMS. This 2006 Reversion Notice complied in all respects with the notice requirements under paragraph 8(f) of the Dick Tracy Agreement. A true and correct copy of this 2006 Reversion Notice is attached hereto as Exhibit B.

17. On April 16, 2008, seven months before his rights under the Dick Tracy Agreement were scheduled to revert to TMS, the Defendant informed TMS by letter that, while he was "prepared to do a TV special in order to preserve my rights," he did not "see how a TV special would benefit either [TMS] or me." The Defendant thus requested that, rather than commencing a project that would benefit neither side, TMS extend his rights under the Dick Tracy Agreement, such that he would maintain his control over certain Dick Tracy motion

-5-

picture and television rights without needing to commence principal photography on a motion picture or television project under that Agreement until November 19, 2013.

18. By letter dated May 8, 2008, TMS responded to the Defendant, stating that "TMS strongly agrees with your statement that a TV special produced for the purpose of preserving your rights would not benefit either TMS or you." TMS rejected the Defendant's request that his rights to the Dick Tracy Property be extended to 2013, but presented a counter-proposal for the Defendant's consideration.

19. On the following day, May 9, 2008, the Defendant declined to accept TMS's counter-proposal.

20. On or about November 14, 2008, and despite his earlier acknowledgement that a television special initiated simply "to preserve [his] rights" would not "benefit either [side]," the Defendant caused his counsel to send an e-mail message attaching a PDF copy of a letter that asserted that the Defendant "will be commencing principal photography on a half-hour Dick Tracy television special." This e-mail communication did not satisfy the form of notice requirements set forth in paragraph 8(f) of the Dick Tracy Agreement.

21. On information and belief, the Defendant has in fact not commenced principal photography on a television special within the meaning of the Dick Tracy Agreement as required by paragraph 9 of that Agreement.

22. By certified letter dated November 18, 2008, TMS notified the Defendant that, despite the unsupported assertions in his counsel's e-mail communication of November 14, 2008, and accompanying letter, all rights previously granted to the Defendant to the Dick Tracy Property had automatically reverted to TMS by operation of paragraph 9 of the Dick Tracy Agreement and TMS's 2006 Reversion Notice.

23.     On or about November 25, 2008, TMS received a check for $15,000 from the Defendant, which purported to represent payment under paragraph 6(a) of the Dick Tracy Agreement for an alleged half-hour Dick Tracy television special.  On information and belief, however, principal photography on a television special within the meaning of the Dick Tracy Agreement had in fact not commenced.  Accordingly, TMS returned this check to the Defendant.

24.     By certified letter dated November 26, 2008, TMS further responded to Defendant's claimed initiation of principal photography on a Dick Tracy television special by stating that "unless and until we receive tangible and legitimate proof that Mr. Beatty has commenced principal photography on a bona fide project within the time frame set forth in paragraph 9 of the [Dick Tracy Agreement], TMS is exercising its right to effect a reversion of the rights licensed in the Dick Tracy Agreement, and this letter shall serve as further written notice to Mr. Beatty that any and all rights licensed to him under the Dick Tracy Agreement hereby automatically revert to TMS."

25.     The Defendant provided none of the requested "tangible and legitimate proof" that he had in fact commenced principal photography on a bona fide Dick Tracy television special within the meaning of paragraph 9 of the Dick Tracy Agreement.  Rather, Mr. Beatty had already filed a lawsuit against TMS in the United States District Court for the Central District of California.

26.     The sole relief sought by Defendant in his lawsuit against TMS in the Central District of California was a judicial declaration that he continued to enjoy all rights under the Dick Tracy Agreement as a result of his alleged commencement of principal photography in November 2008 on a purported Dick Tracy television special.

27.     The lawsuit initiated by the Defendant in November 2008 is in a nascent state and has been dormant since Mr. Beatty's initial filing of the complaint. Within a month of Defendant's filing of the complaint and before any responsive pleading was due, the action was stayed as a result of the commencement of these cases on the Petition Date. To date, Mr. Beatty has not sought to pursue the California action.

28.     TMS seeks before this Court to finally resolve, settle, and gain unfettered use of certain Dick Tracy motion picture and television rights wrongly claimed by Mr. Beatty under the Dick Tracy Agreement.

29.     Mr. Beatty's ongoing assertion of alleged rights to the Dick Tracy Property interferes with TMS's ability to exploit the full value of this extremely lucrative property for the benefit of Debtor's estate and creditors. TMS thus requires a judicial determination of the estate's rights in the Dick Tracy Property in order to remove Defendant's interference therewith and thereby give Debtor's estate the ability to monetize this substantial asset.

30.     On information and belief, the motion picture and television rights at issue under the Dick Tracy Agreement are capable of producing an income stream for the benefit of Debtor's estate and creditors in the tens of millions of dollars. Mr. Beatty's conduct and wrongful claims have effectively locked away certain motion picture and television rights to the Dick Tracy Property from such productive and profitable uses, to the tremendous detriment of the Debtor, its estate, and its creditors.

# COUNT I

## Declaratory Judgment – Property of the Estate Under 11 U.S.C. § 541

31.     TMS restates and realleges each and every allegation set forth in paragraphs 1-30 above as paragraph 31 of this Count I.

32.     A substantial and actual controversy exists between TMS and Mr. Beatty as to whether the theatrical movie and television rights previously granted to Mr. Beatty under the Dick Tracy Agreement have reverted to TMS and thus are the sole and exclusive rights of the Debtor's estate.

33.     A declaration as to the rights of the parties in and to the Dick Tracy Property is needed promptly.  Specifically, a declaration is needed to confirm that any and all rights to the Dick Tracy Property previously granted to the Defendant under the Dick Tracy Agreement have reverted to TMS, and that, accordingly, such rights are the sole and exclusive rights of Debtor's estate under section 541 of the Bankruptcy Code.

34.     Declaratory relief is also needed to confirm that Mr. Beatty has no right or claim to the Dick Tracy Property, including any motion picture or television rights in the Dick Tracy Property.

35.     Accordingly, this Court should grant, pursuant to 28 U.S.C. § 2201, Fed. R. Bankr. P. 7001, and section 541 of the Bankruptcy Code, the declaratory relief requested above and such other and further relief as may be necessary to enforce TMS's property rights in the Dick Tracy Property.

45655/0001-5431919v1

# COUNT II

## Declaratory Relief - Injunction Under 11 U.S.C. §§ 362(a) and 105

36.     TMS restates and realleges each and every allegation set forth in paragraphs 1-30 above as paragraph 36 of this Count II.

37.     All the rights to the Dick Tracy Property, including but not limited to certain motion picture and television rights previously granted to the Defendant pursuant to the Dick Tracy Agreement, are the sole and exclusive rights of Debtor's estate under section 541 of the Bankruptcy Code.

38.     The Defendant's continued assertion of a right or claim to control certain motion picture and television rights previously granted pursuant to the Dick Tracy Agreement is without lawful basis and interferes with Debtor's ability to exploit the full value of the Dick Tracy Property for the benefit of its estate and creditors.

39.     Accordingly, this Court should declare, pursuant to 28 U.S.C. § 2201, Fed. R. Bankr. P. 7001, and 11 U.S.C. §§ 362(a) and 105, that the Defendant is enjoined, by action of the automatic stay under section 362(a) of the Bankruptcy Code and pursuant to the Court's equitable powers under section 105 of the Bankruptcy Code, from asserting any rights or claim to control certain motion picture and television rights previously granted pursuant to the Dick Tracy Agreement.

45655/0001-5431919v1

## PRAYER FOR RELIEF

**WHEREFORE**, TMS respectfully requests that this Court enter judgment in its favor, and, specifically:

### Declaratory Relief

A.      Enter a declaratory judgment declaring the following:

1.      All rights to the Dick Tracy Property previously granted to Mr. Beatty under the Dick Tracy Agreement have reverted to TMS;

2.      Any and all rights to the Dick Tracy Property previously granted to the Defendant under the Dick Tracy Agreement are the sole and exclusive rights of Debtor's estate under section 541 of the Bankruptcy Code;

3.      Mr. Beatty has no right or claim to the Dick Tracy Property, including any motion picture or television rights in the Dick Tracy Property;

4.      The Dick Tracy Property is, without restriction, the sole and exclusive property of the Debtor's estate under section 541 of the Bankruptcy Code; and

5.      By action of the automatic stay under section 362(a) of the Bankruptcy Code and the Court's equitable powers under section 105 of the Bankruptcy Code, the Defendant is enjoined from asserting any rights or claim to control certain motion picture and television rights previously granted pursuant to the Dick Tracy Agreement.

### Injunctive Relief

B.      Enter a permanent and mandatory injunction against Mr. Beatty from interfering with TMS's rights to exercise complete and unfettered dominion and control over the Dick Tracy Property, including enjoining Mr. Beatty from (i) causing the unauthorized publication of any Dick Tracy motion picture, television series, or television special, and

(ii) engaging in any action that would otherwise interfere with TMS's rights to enter into business transactions regarding the motion picture and television rights to the Dick Tracy Property previously granted under the Dick Tracy Agreement; and

### Other Relief

C.    Grant TMS such other relief as is just and proper, including attorneys' fees and costs.

Respectfully submitted,

By: _____
One of the Attorneys for
Plaintiff, Tribune Media Services, Inc.

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Michael P. Doss
Gregory V. Demo
One S. Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:   (302) 652-3117

Dated:  March 19, 2009